UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA KENDRICK, *et al*,

    Plaintiff,

v.

FCA US LLC,

    Defendant.

_____/

Case No. 21-cv-12995
Hon. Matthew F. Leitman

### ORDER (1) DENYING PLAINTIFFS' MOTION TO REMAND (ECF No. 8); AND (2) SETTING BRIEFING SCHEDULE ON DEFENDANT'S PENDING MOTION TO DISMISS

Plaintiffs Barbara Kendrick and Katletha Wilkerson allege that an assembly plant operated by Defendant FCA US LLC ("FCA") near their home in Detroit, Michigan (the "Detroit Plant") emits noxious odors into their neighborhood. (*See* FAC, ECF No. 1-2.) They claim that these odors cause significant physical discomfort, unreasonably interfere with their ability to use and enjoy their residences, and depreciate the values of their residences. In this putative class action, they assert claims of nuisance and negligence against FCA based on its operation of the Detroit Plant.

Plaintiffs originally filed this action in the Wayne County Circuit Court for the State of Michigan. FCA subsequently removed the action to this Court. In its Notice of Removal, FCA contended, among other things, that this Court has subject-

1

matter jurisdiction over the action because (1) there is complete diversity between itself and Plaintiffs, and (2) the amount in controversy for each Plaintiff's claim exceeds $75,000. *See* 28 U.S.C. § 1332(a).

Plaintiffs have now moved to remand the action to state court. In support of that motion, they argue that the amount in controversy for their claims falls below $75,000. They contend that the Court therefore lacks diversity jurisdiction over the action. They also argue that there is no other basis on which the Court has subject-matter jurisdiction over the action. The Court disagrees. For the reasons explained below, the Court concludes that it is more likely than not that the amount in controversy for each Plaintiff's claims exceeds $75,000. Accordingly, the Court concludes that it does have diversity jurisdiction over this action and **DENIES** the motion to remand (ECF No. 8).

I

A

Plaintiffs both reside in Detroit, Michigan. (*See* FAC at ¶¶ 4–5, ECF No. 1-2, PageID.15.) Kendrick owns her home; Wilkerson rents hers. (*See id.*) Plaintiffs live within one mile of the Detroit Plant. (*See id.* at ¶ 10, PageID.16.)

FCA is an automobile manufacturer based in Michigan. FCA owns and operates the Detroit Plant, where it assembles and paints certain automobiles that it produces. (*See* FAC at ¶¶ 7–8, ECF No. 1-2, PageID.15–16.) Plaintiffs allege that

the Detroit Plant is located in "a residential neighborhood" and that over "10,000 people [] reside within one mile of the" Plant. (*Id.* at ¶¶ 9–10, PageID.16.)

Plaintiffs claim that the Detroit Plant emits "noxious odors" that, "[o]n occasions too numerous to list," have invaded "Plaintiffs' neighborhood, residences and yards." (*Id.* at ¶ 15.) According to Plaintiffs, these odors are "very strong" and "foul" and can be smelled "both inside and outside their homes." (*Id.* at ¶ 16.) Plaintiffs also allege that the odors have caused them "to suffer substantial temporary physical discomfort." (*Id.* at ¶ 23, PageID.18.) They report that the odors have caused their neighbors – who are putative class members – to suffer a litany of physical ailments, including "constant headaches" and "burning" and "tingling" sensations. (*Id.* at ¶ 21, PageID.17.) Plaintiffs allege that their own claims are "typical of the claims of" these putative class members. (*Id.* at ¶ 30, PageID.19.) Moreover, Plaintiffs claim that the odors emitted by the Detroit Plant have "caused Plaintiffs to suffer property damages," "reduced the value of [their] property," and have "interfered with [their] use and enjoyment of their property, causing unreasonable inconvenience, annoyance, and discomfort." (*Id.* at ¶¶ 25–26, PageID.18.)

**B**

On November 22, 2021, Plaintiffs filed this putative class action against Stellantis Finance US, Inc. ("Stellantis") in Wayne County Circuit Court. (*See*

Compl., ECF No. 1-3.) On December 16, 2021, Plaintiffs filed a First Amended Complaint in that court. (*See* FAC, ECF No. 1-2.) In the FAC, Plaintiffs dropped their claims against Stellantis and instead asserted claims against FCA. (*See id.*) Plaintiffs assert one count each of nuisance and negligence arising out of FCA's operation of the Detroit Plant. (*See id.* at ¶¶ 34-46, PageID.19-21.) Plaintiffs seek damages along with "such other equitable relief as is just under the circumstances." (*Id.*, PageID.21.) Plaintiffs have since confirmed that the equitable relief they are seeking includes an injunction to "abate the invasion of their properties by noxious odors emitted from [the Detroit Plant]." (Pls. Supp'l Br., ECF No. 22, PageID.432; *see also* 4/14/2022 Hr'g Tr., ECF No. 19, PageID.383 ("[The Court:] Are you seeking an injunction? [Counsel for Plaintiffs]: We are, Your honor.").)

## C

FCA removed Plaintiffs' action to this Court on December 22, 2021. (*See* Notice of Removal, ECF No. 1.) In its Notice of Removal, FCA identified three bases for the Court's subject-matter jurisdiction: (1) diversity jurisdiction, under 28 U.S.C. § 1332(a); (2) Class Action Fairness Act ("CAFA") jurisdiction, under 28 U.S.C. § 1332(d)(2); and (3) federal question jurisdiction, under 28 U.S.C. § 1331.

On January 24, 2022, Plaintiffs filed a motion to remand this action back to Wayne County Circuit Court. (*See* Mot., ECF No. 8.) In their motion, Plaintiffs contended that none of FCA's alleged bases for federal jurisdiction exist in this case.

4

(*See id.*, PageID.55.)  Specifically, with respect to diversity and CAFA jurisdiction, Plaintiffs argued that no diversity of citizenship existed because FCA's headquarters are in Michigan and Plaintiffs are both citizens of Michigan. (*See id.*, PageID.60.) Plaintiffs did not contest the amount in controversy element of diversity jurisdiction in their motion to remand.  On February 14, 2022, FCA filed a response in opposition to Plaintiffs' motion. (*See* Resp., ECF No. 14.)

Plaintiffs replied on February 28, 2022. (*See* Reply, ECF No. 15.)  In their reply, Plaintiffs argued for the first time that the amount in controversy element of federal diversity jurisdiction is not met. (*See id.*, PageID.323–326.)  However, they did not submit the signed statement of damages required by Local Rule 81.1(d) whenever a plaintiff seeks remand on the ground "that the amount in controversy does not exceed the required jurisdictional amount[.]"  Because Plaintiffs' reply newly raised the amount in controversy argument, the Court entered a stipulated order permitting FCA to file a Sur-Reply, (*see* Stip. Order, ECF No. 16), and FCA filed its Sur-Reply on March 17, 2022. (*See* Sur-Reply, ECF No. 17.)

The Court held a hearing on Plaintiffs' motion on April 14, 2022.  At the conclusion of the hearing, the Court ordered Plaintiffs to file the signed statement of damages required by Local Rule 81.1(d).  It further ordered that the parties submit supplemental briefs addressing (1) the legal standard under which the Court must assess the amount in controversy element of federal diversity jurisdiction; (2) the

5

value of the property damages available in this action; (3) the value of damages available for physical discomfort in this case; and (4) the value of the injunctive relief sought in this case. (*See* 4/14/2022 Hr'g Tr., ECF No. 19, PageID.416–418.) Plaintiffs submitted their statements of damages and supplemental brief on May 5, 2022. (*See* Statements, ECF No. 20, 21; Pls. Supp'l Br., ECF No. 22.) FCA filed its supplemental brief on June 9, 2022. (*See* FCA Supp'l Br., ECF No. 25.)

## II

### A

Under the federal removal statute, 28 U.S.C. § 1441, "a defendant may [generally] remove a civil case from state court to federal court if the action could have originally been brought in federal court." *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). A removing defendant "bears the burden to show federal jurisdiction." *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1063 (6th Cir. 2008).

Here, FCA contends that this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a). That statute imposes two prerequisites on federal jurisdiction: (1) "the amount in controversy [must] exceed[] $75,000;" and (2) "there [must be] diversity of citizenship among the parties." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019); *see also* 28 U.S.C. § 1332(a). The Court

6

concludes that FCA has carried its burden of demonstrating that both prerequisites to diversity jurisdiction exist here.

### B

The Court turns first to diversity of citizenship. Under 28 U.S.C. § 1332(a)(2), diversity of citizenship exists where the suit is between "citizens of a State and citizens or subjects of a foreign state." Here, Plaintiffs are citizens of Michigan. (*See* FAC at ¶¶ 4–5, ECF No. 1-2, PageID.15.) For FCA (an LLC), citizenship is determined by the "citizenship of each of its members." *Trident-Allied Assocs., LLC v. Cypress Creek Assocs., LLC.*, 317 F. Supp. 2d 752, 753 (E.D. Mich. 2004). FCA's

sole member is not a citizen of Michigan.[1] Accordingly, complete diversity exists here.[2]

---

[1] FCA is an LLC whose sole member is FCA North America Holdings LLC (an LLC organized under Delaware law). (*See* Resp., ECF No. 14, PageID.301.) FCA North America Holdings LLC's sole member is FCA Foreign Sales Holdco Ltd., which is incorporated in the United Kingdom. (*See* Declaration of Dave D. Valley, ECF No. 28, PageID.463.) "[F]or purposes of diversity subject-matter jurisdiction," the citizenship of an "Ltd." incorporated in the United Kingdom is determined in the same manner as the citizenship of an American "corporation." *Green Coast Enterprises, LLC v. Certain Underwriters at Lloyd's*, 2022 WL 2208206, at *4–5 (E.D. La. June 21, 2022); *Brink's Co. v. Chubb Eur. Grp. Ltd.*, 2020 WL 6829870, at *5 (E.D. Va. Nov. 20, 2020) (holding that an "Ltd." incorporated in the United Kingdom "is an analog to an American corporation" and thus "need only [] demonstrate the place of incorporation and principal place of business" for diversity citizenship purposes). Accordingly, FCA Foreign Sales Holdco Ltd. is a citizen of its place of incorporation and its principal place of business – both of which are in the United Kingdom. (*See* Valley Decl., ECF No. 28, PageID.463.) Since FCA Foreign Sales Holdco Ltd. is a citizen of the United Kingdom, FCA North America Holdings LLC – of which FCA Foreign Sales Holdco Ltd. is the sole member – is also a citizen of the United Kingdom. And since FCA North America Holdings LLC is a citizen of the United Kingdom, FCA – of which FCA North America Holdings LLC is the sole member – is also a citizen of the United Kingdom.

[2] In their motion to remand, Plaintiffs argued originally that FCA's citizenship was to be determined under CAFA. Under CAFA, an LLC is considered to be a citizen of wherever it has its principal place of busines and under whose laws it is organized. *See* 28 U.S.C. § 1332(d)(1). Therefore, Plaintiffs contended that FCA – a Delaware LLC with its headquarters in Michigan – was a citizen of the state of Michigan, and therefore that there was no diversity here. (*See* Mot., ECF No. 8, PageID.58.) However, as Plaintiffs conceded at oral argument, CAFA's test does not govern the determination of an LLC's citizenship in the context of determining whether traditional diversity jurisdiction exists under 28 U.S.C. 1332(a). (*See* 4/14/2022 Hr'g Tr., ECF No. 19, PageID.389–390.) Accordingly, the fact that FCA is headquartered in Michigan is irrelevant to the Court's analysis of whether it has subject-matter jurisdiction under 28 U.S.C. 1332(a). *See, e.g., Harvey v. Advisors Mrtg. Grp., LLC*, 2021 WL 4521065, **2, 5 (S.D. Cal. 2021) (analyzing jurisdiction under 28 U.S.C. § 1332(a) rather than CAFA's provisions because "[a]lthough Plaintiff filed a

C

The Court turns next to the amount in controversy. FCA bears the burden of "show[ing] by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount-in-controversy requirement." *Northup Properties, Inc. v. Chesapeake Appalachia,* L.L.C., 567 F.3d 767, 769–70 (6th Cir. 2009). FCA has carried that burden. It has shown that the value of the two types of damages sought by Plaintiffs – physical manifestation damages of inconvenience, annoyance, and discomfort ("Physical Manifestation Damages") and damage to the value of their property ("Property Damages") – exceeds $75,000.

1

a

As FCA correctly notes, Plaintiffs' own estimate of their Physical Manifestation Damages confirms that the amount in controversy exceeds $75,000. In their signed statements of damages, Plaintiffs estimate that their Physical Manifestation damages are valued at $15 per hour for eight hours per day. (*See* Statements, ECF No. 20, 21.) This amounts to $120 per day. Under Michigan law, if Plaintiffs prevail on their nuisance claim, they would be entitled to recover that

---

putative class action, Defendant removed Plaintiff's Complaint … on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a) rather than under CAFA") (internal citation omitted); *Adams v. Eagle Road Oil LLC*, 403 F. Supp. 3d 1197, 1203 n.4 (N.D. Okla. 2019) (noting "different rule as to unincorporated associations for purposes of CAFA" only) (internal quotation marks omitted).

$120 per day for the Physical Manifestation Damages for two time periods: (1) from the beginning of the nuisance through the filing of the Amended Complaint; *and* (2) from the filing of the Amended Complaint up "to the time of trial." *Oakwood Homeowners Ass'n, Inc. v. Marathon Oil Co.*, 305 N.W.2d 567, 569 (1981) (identifying the measure of damages in a nuisance action, such as this one, in which the plaintiff seeks to enjoin a non-permanent nuisance and to recover damages caused by the nuisance). And Plaintiffs' counsel confirmed during the hearing on the motion to remand, Plaintiffs have always intended to seek damages for these two periods. (*See* 4/14/2022 Hr'g Tr., ECF No. 19, PageID.373–74.) Thus, at the time of removal – the critical point at which this Court must analyze whether the jurisdictional minimum is met – the Physical Manifestation Damages at issue in this action included damages incurred both before the filing of the Amended Complaint and extending from that point through the trial of this action.

The Court finds that it is more likely than not that the value of the Physical Manifestation Damages Plaintiffs sought for those two periods exceeds $75,000. First, the Physical Manifestation Damages Plaintiffs claim to have suffered before filing their Amended Complaint are likely in the range of $36,000. They filed that pleading on December 16, 2021, and they alleged FCA began operating the Detroit Plant – and that the noxious odors began – in March of 2021. Plaintiffs thus allege that they suffered Physical Manifestation Damages for approximately "10 months"

10

before filing their Amended Complaint. (Statements of Damages, ECF No. 20, 21, PageID.422, 424.) Ten months is (very roughly) 300 days, and at $120 day per day for each of those days, the Physical Manifestation Damages allegedly incurred before filing the Amended Complaint would be roughly $36,000.

Second, at the time of removal, it was more likely than not that the Physical Manifestation Damages accruing between the filing of the Amended Complaint (December 2021) and the end of the trial would very likely approach $70,000. At the time of removal, the parties had not even commenced discovery, and thus at that point there was substantial work to be done before the case would even be ready for trial. Moreover, at the time of removal, due to the Covid-19 pandemic, the Court had a substantial backlog of both criminal and civil jury trials, and that backlog all but ensured that this case would not come to trial until the summer of 2023 (at the earliest). Thus, at the time of removal, the Physical Manifestation Damages at issue from the filing of the Amended Complaint (December 2021) through the time of trial (July 2023, at the earliest) spanned roughly 19 months. This amounts to roughly $70,000 in damages.[3] Taking these damages together with the Physical Manifestation Damages incurred before the filing of the Amended Complaint, it is

---

[3] 19 months is approximately 570 days. At $120 per day, that amounts to $68,400 in Physical Manifestation Damages for this period.

11

more likely than not that, at the time of removal, the total value of all of the Physical Manifestation Damages in controversy in this action exceeded $75,000.

b

Plaintiffs counter that the Court cannot consider Physical Manifestation Damages accruing after removal for purposes of this motion to remand. They explain that the Court makes its assessment of jurisdiction – and of the amount in controversy – at the time of removal. (*See* Pls.' Supp'l Br., ECF No. 22, PageID.427.) Thus, they argue, damages that may accrue after removal may not be included in determining the amount in controversy. (*See id.*) Accordingly, Plaintiffs insist that Physical Manifestation Damages accruing after removal and through a future trial date are not counted toward the amount in controversy here. (*See id.*, PageID.428.) The Court disagrees.

Plaintiffs are correct that this Court must assess the amount of controversy as of the date of removal. *See Northup Properties*, 567 F.3d at 769–70. But that does not mean, as Plaintiffs seem to suggest, that the Court may not consider damages accruing after removal – and, indeed, up through trial – in determining the amount in controversy. As the United States Court of Appeals for the Ninth Circuit has explained in rejecting an argument much like that made by Plaintiffs:

> [Plaintiff] nevertheless argues that, in calculating the amount in controversy, we may only consider lost wages for the period between her termination in February 2014 and [defendant's] removal of this action a little over a year

12

later in March 2015. Looking only at this period, [plaintiff's] lost wages would be less than $75,000 and would not satisfy the amount-in-controversy requirement. [Plaintiff] bases this argument on our oft-repeated statement that the amount in controversy is assessed as of "the time of removal." *See, e.g.*, *Kroske*, 432 F.3d at 980. She contends that this means the amount in controversy does not include any damages incurred after the time of removal, such as her lost earnings from after March 2015.

In considering this argument, we begin with first principles. The amount in controversy is "not a prospective assessment of [a] defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Rather, it is the "amount at stake in the underlying litigation." *Gonzales*, 840 F.3d at 648–49. If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are "at stake" in the litigation, whatever the likelihood that she will actually recover them. In such a situation, although the plaintiff's employer would have paid the wages in the future had she remained employed, they are *presently* in controversy. Indeed, courts generally assume as much without discussion. *See, e.g.*, *Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 515 (7th Cir. 2006) (taking into account plaintiff's "lost wages (past and future)"); *Nelson v. Keefer*, 451 F.2d 289, 294 n.10 (3d Cir. 1971) (the amount in controversy includes "wages and earnings, past and future").

When we say that the amount in controversy is assessed at the time of removal, we mean that we consider damages that are claimed at the time the case is removed by the defendant. So, for example, if a plaintiff files a complaint in state court and voluntarily dismisses a claim before removal, any relief that might have been awarded on the dismissed claim will not be included in the amount in controversy. Likewise, when the amount in controversy is satisfied at removal, any subsequent amendment to the

13

> complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292–93, 58 S.Ct. 586, 82 L.Ed. 845 (1938). That the amount in controversy is assessed at the time of removal does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy. *See, e.g., Steel v. United States*, 813 F.2d 1545, 1547 (9th Cir. 1987) (noting that "past and future pension payments" exceeded the amount-in-controversy requirement); *Broglie v. MacKay–Smith*, 541 F.2d 453, 455 (4th Cir. 1976) ("[A] plaintiff may properly include as part of the amount in controversy costs which will not be incurred until after the suit is ended.").
>
> *In sum, the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.*

*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417–18 (9th Cir. 2018) (emphasis added). *See also Leslie v. Conseco Life Ins. Co.*, 2012 WL 4049965, at *3 (S.D. Fla. Sept. 13, 2012) (explaining that "[t]his Court" and "[o]ther districts" have "held that it is appropriate to use damages calculated through a trial date for purposes of determining amount in controversy.")

As *Chavez* makes clear, the Court may count post-removal Physical Manifestation Damages toward the amount in controversy because at the time of removal Plaintiffs sought those damages and were entitled to recover those damages if they prevailed.

14

Finally, the Court rejects Plaintiffs' argument that post-removal Physical Manifestation Damages here are "too speculative" to include in the amount in controversy calculation. These damages do not seem speculative at all. Plaintiffs claim that they suffer these damages nearly every time that FCA operates the Detroit Plant, and there is no reason to believe that FCA will cease operating the plant on a regular basis. Nor have Plaintiffs presented the Court with any reason to believe that before trial, FCA will voluntarily abate the nuisance (by installing enhanced air pollution controls) and/or will be forced to do so by a government agency. To the contrary, Plaintiffs allege that the Detroit Plaint has continued to operate – and emit odors – despite "numerous media reports," "calls from members of Congress and Detroit City council members to fine [FCA] for its emission of nuisance odors," and "several Notices of Violation" issued by the Michigan Department of Environment, Great Lakes and Energy. (FAC at ¶¶ 17, 19, ECF No. 1-2, PageID.16, 17.) Plaintiffs' own theory thus appears to be that nothing short of an order of this Court will cease the odors. Thus, it is not speculative for the Court to factor Plaintiffs' post-removal Physical Manifestation Damages into its jurisdictional analysis.

**2**

Even if the Physical Manifestation Damages sought by Plaintiffs somehow fell slightly short of the $75,00 jurisdictional threshold (which they do not), that threshold would still be met by adding in the Property Damages that Plaintiffs sought

15

at the time of removal. In their Statements of Damages, Plaintiffs allege they are entitled to 20% of their properties' rental value in Property Damages. (*See* Statements of Damages, ECF Nos. 20, 21.) For Kendrick, that is $295/month; for Wilkerson that's $175/month. (*See id.*) As with the Physical Manifestation Damages, Plaintiffs would be entitled to recover these damages all the way through trial. Thus, at the time of removal, there were roughly 29 months of Property Damages at issue in this action (the 10 months prior to the filing of the Amended Complaint and the roughly 19 months between the filing of that pleading and a trial in this action). That amounts to approximately $8,555 in Property Damages for Kendrick and approximately $5,075 in Property Damages for Wilkerson. When these damages are added to Plaintiffs' Physical Manifestation Damages, it becomes even clearer that the amount in controversy for each Plaintiff exceeds $75,000.[4]

### III

For the reasons provided above, the Court concludes that both prerequisites for federal diversity jurisdiction are present here and that the Court therefore has

---

[4] As noted above, Plaintiffs are also seeking injunctive relief, and it is appropriate to consider the value of injunctive relief when determining the amount in controversy. *See Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). However, the Court does not attempt to value the injunctive relief here because the other damages sought by Plaintiffs easily exceed the $75,000 jurisdictional threshold.

subject matter jurisdiction over this action. Accordingly, Plaintiffs' motion to remand (ECF No. 8) is **DENIED**.

The Court reminds Plaintiffs that on February 1, 2022, this Court issued an order pausing briefing on FCA's motion to dismiss pending resolution of Plaintiffs' motion to remand. (*See* Order, ECF No. 12.) Now that the Court has denied Plaintiffs' motion and in accordance with the Court's previous order, the Court **DIRECTS** Plaintiffs to notify the Court, by not later than July 21, 2022, as to whether they intend to file a Second Amended Complaint ("SAC"). If they inform the Court that they intend to file an SAC, then Plaintiffs shall file their SAC by not later than August 11, 2022, and the Court shall terminate without prejudice FCA's currently-pending motion to dismiss as moot. If Plaintiffs inform the Court that they do not wish to file an SAC, then they shall file a response to FCA's currently-pending motion to dismiss by not later than August 4, 2022.

**IT IS SO ORDERED.**

Dated: July 14, 2022

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 14, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

17